ADAM GORDON
United States Attorney
LISA M. HEMANN
Arizona State Bar No. 024703
MATTHEW RILEY
California State Bar No. 257643
Assistant U.S. Attorneys
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 546-6964/9675
Facsimile: (619) 546-7751
Email: lisa.hemann@usdoj.gov
Email: matthew.riley2@usdoj.gov

Attorneys for Federal Defendants

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.M. and C.L.V., on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.,*<br><br>Defendants. | Case No.: 25-cv-02308-JO-AHG<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR ALTERNATIVELY, MOTION TO STAY CASE**<br><br>Hearing Date: June 4, 2026<br>Time: 9:30 a.m.<br>Judge: Hon. Jinsook Ohta<br>Courtroom: 4C |

Defendants U.S. Department of Homeland Security, et al., hereby reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint for Declaratory Relief and Other Relief; or in the Alternative, Motion to Stay Case During Pendency of Related Federal Litigation (ECF No. 30). This Reply is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants' Motion to Dismiss should be granted because, regardless of how Plaintiffs frame their lawsuit, they cannot deny that their claims arise from Defendants' actions taken to "commence proceedings, [or] adjudicate cases." 8 U.S.C. § 1252(g). As

such, there is no jurisdiction to challenge such actions in district court. However, even if there was jurisdiction to hear such claims, the challenged conduct is not currently taking place and any order attempting to change Defendants' conduct would thus be moot. Finally, the Court should dismiss this lawsuit because Plaintiffs fail to challenge any specific final agency actions and therefore fail to establish jurisdiction and state a claim under the Administrative Procedure Act (APA). Even to the extent they cast their claims as broad policy challenges, the claims in this case are not the proper subject of a challenge under the APA.

In the alternative, this Court should stay this case because there is currently a nationwide stay in *Make the Road New York, et al. v. Noem, et al.*, No. 25-cv-00190-JMC (D.D.C. Aug. 29, 2025) of specific enforcement actions by the Department of Homeland Security (DHS). That stay directly impacts both the subject matter and the purported class members of this case. Consequently, a stay in this case would promote the orderly course of justice by avoiding the potential for conflicting or complicated rulings, and by advancing judicial economy.

## II.    ARGUMENT

### A. Section 1252(g) Applies to This Case.

In their opposition to Defendants' Motion to Dismiss, Plaintiffs argue that 8 U.S.C. § 1252(g) does not apply because they are challenging agency "blanket policies," not the adjudication of removal proceedings. *See* ECF No. 34, at 8, 15. Yet, Plaintiffs' allegations show that their challenges arise directly from the decisions to seek and grant dismissal of removal proceedings, including the timing, manner, and procedural handling of those dismissals. Plaintiffs essentially challenge what they have identified as a pattern in how immigration removal proceedings were being adjudicated for a period of time. Specifically, they challenge the ability of a DHS attorney to dismiss removal proceedings (ECF No. 1, ¶ 56), of the immigration judge to grant dismissal of such proceedings (*id.*, ¶ 57), and of an Immigration and Customs Enforcement (ICE) agent to make an arrest of that same individual at the San Diego Immigration Court in the John Rhoades Federal Judiciary

Center (FJC) (*id.*, ¶¶ 47-48). And Plaintiffs challenge the alleged coordination between these individual actions. *See, e.g.*, *id.*, ¶¶ 8, 56, 86, 102.

However, decisions to adjudicate removal cases, including DHS attorneys' decisions to move to dismiss, and an immigration judges' decisions regarding such a motion to dismiss, are the actual process of adjudication. In other words, challenges to these actions are challenges to "the decision or action … to adjudicate [a] case[]." 8 U.S.C. § 1252(g); *see Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483-95 (1999) (barring review of claims arising from the government's decisions to commence proceedings, adjudicate cases, or execute removal orders). Plaintiffs cannot escape this provision of the Immigration and Nationality Act (INA) by recasting adjudicatory challenges as one broad challenge directed at "an overall policy." ECF No. 1, ¶ 8. For the Court to grant relief here, it would have to regulate the circumstances and procedures under which removal proceedings may be dismissed, which is precisely the type of judicial interference with the adjudication of removal cases that § 1252(g) bars. As such, the Court lacks subject matter jurisdiction over Plaintiffs' claims.

**B. Plaintiffs' APA Claims Are Not Viable.**

Plaintiffs also fail to establish that they are entitled to judicial review because they cannot identify the final agency action they are challenging. *See* 5 U.S.C. § 704 (limiting judicial review to "[a]gency action made reviewable by statute *and final agency action*") (emphasis added). In their opposition, Plaintiffs explain they are challenging a generalized system of policies "culiminat[ing] in DHS's unlawfully manufacturing an opportunity to arrest Plaintiffs … at the [FJC] as they leave immigration hearings." ECF No. 34 at 7; *see also* ECF No. 1, ¶ 8 ("Plaintiffs challenge the overall policy of civil immigration arrests at the San Diego Immigration Court pursuant to new written policies...."). This broad-based challenge must fail because the APA does not permit programmatic attacks that are untethered to any discrete, identifiable agency action. *See* 5 U.S.C. §§ 701-06; *see also Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 891 (1990) (noting that a litigant "cannot seek *wholesale* improvement of [a] program by court decree, rather than in the offices of

*Defendants' Reply in Support of Motion to Dismiss, or Alternatively Motion to Stay*    3    25-cv-02308-JO-AHG

the Department or in the halls of Congress, where programmatic improvements are normally made. Under the terms of the APA, [a litigant] must direct its attack against some particular 'agency action' that causes it harm.") (emphasis in original). Plaintiffs do not identify a single or stand-alone policy applicable to the challenged conduct but rather expressly rely on a patchwork of so-called written materials[1], notably all from different agencies and addressing different sets of circumstances. Their reliance on these several different policies from different agencies underscores the lack of a "final agency action."

In order "[t]o qualify as final, the action challenged must mark the consummation of the agency's decisionmaking process and must be one by which rights or obligations have been determined, or from which legal consequences flow." *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 801 (9th Cir. 2013 ) (internal quotations and citation omitted); *see also Tohono O'odham Nation v. United States Dep't of the Interior*, 138 F.4th 1189, 1200 (9th Cir. 2025) ("The core question [for determining a final agency action] is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties") (internal citation omitted). Here, Plaintiffs cannot explain how this challenged overall policy represents the culmination of some decision-making process taken up by the multiple agency Defendants[2], nor how such overall policy has led to any finality in the determination of the rights and obligations of the proposed class members, let alone for just the named Plaintiffs.

Even if the Court were to consider Plaintiffs' challenge here as to each individual policy alleged in Plaintiffs' Complaint, the Court still could not conclude that each such individual policy was a final agency action for the same reasons. The challenged policies determine neither rights nor obligations of anyone, nor impose binding legal consequences.[3]

---

[1] Apart from a press release issued by the then-Acting DHS Secretary Benjamine Huffman, most of the challenged policies are only memoranda either identified as guidance, or that expressly note that they do not "create bright light rules." ECF No. 1 at ¶¶ 47, 48, 53, and 55. Plaintiffs also refer to a policy consisting of, "on information and belief," an alleged e-mail from Executive Office for Immigration Review (EOIR) found in a "Practice Alert" on the website of the American Immigration Lawyers Association. *Id.*, at ¶ 57.

[2] The agencies include DHS, ICE, and EOIR.

[3] None of the individual policies challenged by Plaintiffs concern or govern arrests made at

What the Plaintiffs allege to be policies are actually statements purporting to guide the exercise of discretion by agency officers, attorneys, and immigration judges. While Plaintiffs cast their claims as a broad challenge to this overall policy, what they are actually challenging is a pattern of discretionary adjudicatory decisions, i.e., DHS counsel's decision to seek dismissal of an individual's INA § 240 proceedings and the immigration judge's decision to grant such dismissal, and an ICE agent's decision to arrest that individual in a particular location. *See* ECF No. 34 at 7. Yet, a pattern of individual decisions is not a final agency action within the meaning of the APA. *See* 5 U.S.C. § 551(13); *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 20 (D.C. Cir. 2006) (finding that a challenge to "the sum of 'many individual actions,' including some 'yet to be taken,'" did not qualify as a final agency action as required by the APA).

Relying on *Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005), Plaintiffs argue that the challenged policies here are final because they demonstrate "a definitive statement of new policy and directive for agencies to act." ECF No. 34 at 13. In *Indus. Customers of Nw. Utilities*, the Ninth Circuit reiterated that the test for a "final agency action" was whether the action was the "consummation" of the agency's decision-making process, and whether the action was one by which "rights or obligations have been determined." *Id.* The Ninth Circuit identified "certain factors [that] provide indicia of finality, such as whether the action amounts to a definitive statement of the agency's position, whether the action has a direct and immediate effect on the day-to-day operations of the party seeking review, and whether immediate compliance with the terms is expected." *Id.* Ultimately, however, the Ninth Circuit found that the challenged action in that case, the Bonneville Power Authority's "Final Record of Decision", was neither a definitive statement nor otherwise sufficiently final to provide jurisdiction under the APA.

---

or near immigration courts. *See* ECF No. 1, ¶¶ 47, 55, 57.

Here, none of the alleged individual policies (let alone the policy patchwork Plaintiffs challenge) have the indicia of finality that are nearly as significant or measurable as what was challenged in *Indus. Customers of Nw. Utilities*, where the Ninth Circuit found that there was no final agency action. Further, none of the challenged policies, individually or as a system, require "immediate compliance with their terms." *Id.* at 646. Rather, the language of the various memoranda identified by Plaintiffs is discretionary. In fact, Plaintiffs' assertion that the alleged policies mandated any particular action is belied by their own argument. For example, Plaintiffs argue that DHS "rescind[ed] *guidelines* for law enforcement activities in 'sensitive areas,'" that ICE agents "*may* make arrests in courthouses," that "agents *may* conduct civil immigration enforcement actions in or near courthouses," and that DHS had the "*ability* to make" and that EOIR had the "*ability* to grant" dismissals. ECF No. 34 at 19-20. None of these statements mandate any particular action over another.

And while Plaintiffs argue that these policies were "implemented and enforced," they fail to identify or explain how any particular actions were mandated by any of the alleged policies. In other words, Plaintiffs cannot demonstrate that the alleged "blanket policies" (ECF No. 34 at 21) either contained any indicia of finality, or that they impacted rights or obligations or imposed legal consequences on the putative class members. Because Plaintiffs do not challenge a final agency action, their claims are not viable under the APA and this Court should dismiss them.

**C. Plaintiffs' Argument Against Mootness Fails.**

Alternatively, Plaintiffs' claims should be dismissed because the challenged conduct of immigration arrests at the FJC is not currently happening and, therefore, Plaintiffs' claims arising from them are moot. Plaintiffs argue that the claims they assert are not moot because these arrests at the FJC could be "repeatable at Defendants' whims," and that they have identified "several written, formal DHS policies that caused their harm." ECF No. 34 at 15-16.

The "capable of repetition, yet evading review" exception to the mootness doctrine "is to be used sparingly, only in 'exceptional situations,' 'and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality.'" *Wallingford v. Bonta*, 82 F.4th 797, 801 (9th Cir. 2023) (quoting *Los Angeles v. Lyons*, 461 U.S. 95 (1983)). Here, Plaintiffs have not demonstrated, and cannot demonstrate, that they have a reasonable expectation of recurrence. While Plaintiffs point to an "overall policy" to argue they reasonably expect arrests at the FJC to recur, neither the cumulation of the policies nor the separate, individual policies mandate courthouse arrests or any of the other specific procedures or other conduct that is the crux of Plaintiffs' claims. Plaintiffs all but admit this. *See infra* Part II(d). Any future occurrence would depend on a series of independent, discretionary decisions, rendering the asserted harm contingent rather than imminent. For these reasons, Plaintiffs' claims are moot, and they have failed to show that there is any demonstrated probability of recurrence.

## D. Defendants' Actions Do Not Violate Established Law.

In their opposition, Plaintiffs argue that they have sufficiently pled that the "challenged policies" violate the INA and the Constitution. However, Plaintiffs fail to identify any statutory provision in the INA prohibiting arrests at or near immigration courtrooms or otherwise limiting DHS's authority based on location. To the extent Plaintiffs rely on *Valezquez-Hernandez v. U.S. Immigr. & Customs Enf't*, 500 F.Supp.3d 1132 (S.D. Cal. 2020), it bears noting that the Court in that case did not prohibit arrests at the FJC, but rather at the federal district court. Plaintiffs' claims are different, and they cite to no authority prohibiting arrests outside of immigration courtrooms, which is the alleged conduct at issue here.

Moreover, the INA grants immigration officers broad authority to effectuate arrests based on removability and risk of flight, without location-based restrictions. *See* 8 U.S.C. §§ 1357(a)(2), 1226. Congress did not incorporate any common law courthouse privilege related to law enforcement arrests, as referenced by Plaintiffs, into the INA.

**E. This Court Has Authority to Stay This Case.**

Alternatively, Defendants request that the Court stay this action during the pendency of another related case, *Make the Road New York, et al. v. Noem, et al.*, No. 25-cv-00190-JMC (D.D.C. Aug. 29, 2025), in which the United States District Court for the District of Columbia entered a nationwide stay. Plaintiffs argue that this case should not be stayed because they would continue to face potential risk of courthouse arrests and because a stay would not actually promote judicial economy given that the challenges in *Make the Road New York* are different than in this case.

While Defendants acknowledge that Plaintiffs' challenges in this case are different from those in *Make the Road New York*, the stay in *Make the Road New York* directly impacts arrests at immigration courtrooms, *i.e.*, the conduct Plaintiffs are challenging here. Specifically, the court in *Make the Road New York* stayed DHS's designation and guidance that extended the applicability of expedited removal to "the full scope of its statutory authority." In other words, it expanded expedited removal to reach a different population of individuals. That different population includes putative class members in this case—individuals whose INA § 240 proceedings are dismissed and who are then placed into expedited removal and arrested as they exit immigration courtrooms at the FJC. Therefore, the stay in *Make the Road New York* mitigates against the risk of arrests outside of immigration courtrooms on the basis of expedited removal.[4]

For these reasons, a stay in this case is warranted.

**III.    CONCLUSION**

The Court lacks jurisdiction to hear challenges to removal adjudications, whether individually or collectively, because such challenges arise from a decision to "commence proceedings, [or] adjudicate cases." 8 U.S.C. § 1252(g). Further, the conduct Plaintiffs challenge—arrests outside the San Diego Immigration Court at the FJC—is not taking place, rendering Plaintiffs' challenges here as moot. Finally, Plaintiffs' primary challenge—

---

[4] Moreover, none of the policies challenged by Plaintiffs govern arrests at the San Diego Immigration Court, or at any other immigration court.

to "the overall policy of civil immigration arrests at the San Diego Immigration Court pursuant to new written policies" (ECF No. 1, ¶ 8)—is not a final agency action. Plaintiffs' claims require that they challenge this system of policies, but even if they challenged each policy individually, Plaintiffs still could not establish that they were final agencies actions. As such Plaintiffs' claims are beyond the scope of review under the APA. For all the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss, or that the Court stay this matter during the pendency of *Make the Road New York, et al. v. Noem, et al.*, No. 25-cv-00190-JMC (D.D.C. Aug. 29, 2025).

DATED:  May 12, 2026

ADAM GORDON
United States Attorney

*s/ Lisa Hemann*
LISA M. HEMANN
MATTHEW RILEY
Assistant U.S. Attorneys